Joseph M. Marshall, Plaintiff in Error *vs.* Henry N. Hart, et al., Defendants in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Hart obtained a judgment against Randall, in the District Court of Ramsey county, in September, 1850, upon confession under a Warrant of Attorney, a proceeding authorized by the laws of Wisconsin, then in force in the Territory. The judgment remained without further proceedings thereon, until March, 1859, when an execution was issued thereon, by leave of Court, duly obtained. The judgment debtor moved to set aside the execution upon the ground of irregularities in the entry of the judgment, which motion was denied. Afterwards, the successor in interest of Randall, upon whose property the execution had been levied, enjoined the sale and asked that the judgment should be declared a nullity, upon the grounds that the same had been irregularly entered, and that it did not operate as a lien upon the property. *Held,* that the judgment was good until reversed upon appeal or Writ of Error, or relieved against upon the grounds of mistake, inadvertance, surprise or excusable neglect of the judgment debtor, and that the act of the Territorial Legislature, revising and consolidating the general laws of the Territory, approved March 31, 1851, made no alteration in regard to the lien of judgments, except to limit its duration to ten years, to make it commence from the time of docketing in the county, instead of its rendition, and to extend the time for issuing execution from two, to five years. That the repealing clause of the act affected only such parts of the old Statutes as were not retained in the new, and that the lien of judgments then existing was not thereby destroyed; and were it otherwise, the repeal would affect only such as were not docketed, and the lien would again attach, by complying with the new law, from the time of the docketing.

The Plaintiff brings this action to set aside a certain judgment obtained by the Defendant, Henry N. Hart, on the 17th day of September, A. D. 1850, in the District Court of the then first District of the late Territory of Minnesota, against one Wm. H. Randall.

The judgment was obtained in Term time on bond and warrant of Attorney, and entered upon a declaration and a plea of confession. (*See also opinion of Court.*)

The complaint alleges that the Plaintiff is the owner of certain lands described therein in fee simple, and of all the estate, title, etc., which Wm. H. Randall ever had therein, which land was sold under four several judgments against said Randall, subsequent to the Hart judgment, and was all successively redeemed by the Plaintiff herein as being the owner of a judgment against said Randall, subsequent to the judgments under which the land was sold, and that by virtue of such sales and redemption he received a Sheriff's deed.

The Plaintiff also alleges that he held a mortgage on said lands subsequent to the Hart judgment. That his whole title

through the judgment and mortgage is as a trustee for certain special trusts. That said Randall did not acquire title to any of the real estate till long after September, 1851.

The complaint then proceeds to charge that the Hart judgment was rendered upon certain papers filed separately with the clerk. The said papers did not authorize the entry of said judgment, and that said judgment was wholly unauthorized, and that the said judgment and all the proceedings thereon rendered are void. That said pretended judgment was never signed, filed nor perfected. That no costs were taxed or carried out. That no judgment record or roll was ever made up, signed or filed, and that it was never docketed as required by law, and that there is no record of said judgment, and that it never was a lien on the premises described in the complaint, and that said judgment is a cloud on Plaintiff's title.

There are other allegations in the complaint bearing on the Plaintiff's prayer for an injunction, and which were considered when this cause was before the court on the motion to dissolve the injunction. *See case of Hart and Caldwell vs. Marshall, ante p.* 294.

The answer denies the ownership of Plaintiff, except as the proceedings set out show title, and as to part of the premises, sets up an affirmative release by the owner of one of the judgments. As to the Plaintiff's allegation concerning the judgment, the answer denies " That no such action was ever instituted, and avers that the judgment was *duly* rendered in Term time, and upon full and sufficient proof. It denies that the papers were filed separately and avers that they were filed all together. It denies that the exhibits are true copies. It denies that said papers do not authorize the entry of judgment, and denies that said entry *was unauthorized ;* denies that it is void ; denies that it was never signed, filed or perfected, denies that no record or roll was ever made up, signed or filed, and denies that it was not docketed as required by law, and denies that it was not a lien, and denies knowledge or information sufficient to form a belief as to the time of Randall's acquiring title to the property.

It then sets up affirmatively that the judgment was in all respects duly rendered in term time and duly docketed, and

that it is a good subsistent lien, and avows the intent to enforce it. The reply raises no new point. The case was tried by the Court without a jury, and his decision rendered in writing, dismissing the complaint, and judgment was entered for the Defendant for costs. The Judge in his decision found as facts that the judgment was duly rendered under the Wisconsin law, and in all respects conformable therewith. That Randall, acquired the property after September, 1851, but that the Defendant's judgment was a lien on it prior to that of the Plaintiff. No case or bill of exceptions is made, and no exception taken to the decision of the court, and Plaintiff sues out a writ of error to this court.

Points and authorities of the Plaintiff in Error :

*First.*—The judgment was without writ, and depended upon the special statute of Wisconsin for its validity; the papers upon which it was founded, as admitted in the pleadings, show that it was unauthorized under the *Statutes*, and therefore void. *See Exhibits C, D, E, F, of Complaint, and admissions of answer; Session Laws of Wisconsin Territory,* 1844, *page* 105 ; *Revised Statutes of Wisconsin,* 1839, *page* 228, *&c; Westervelt vs. Lewis,* 2 *McLean,* 511.

*Second.*—If valid, the lien of such judgment was derived under a special statute of Wisconsin Territory, and received no efficacy from docketing. *Session Laws of Wisconsin Territory,* 1841, *page* 29.

*Third.*—It derived no lien from the *Statutes of Minnesota,* which are prospective. *Compiled Statutes of Minnesota* 566.

*Fourth.*—The *Statutes of Wisconsin Territory,* giving a lien to said judgment was repealed without a saving clause by the *Revised Statutes of Minnesota. Compiled Statutes of Minnesota, page* 116 ; *Revised Statutes, pages* 578, 579. And no right having vested in the real estate at the time of the repeal, (said real estate having been acquired by Randall after the repeal, and conveyed out of his hands before levy,) Henry N. Hart has no lien upon the real estate in question. *Butler vs. Palmer,* 1 *Hill.* 325 ; *Tenelon's Petitions,* 7 *Bar.* 173; *Saco vs. Garney,* 34 *Maine* 14 ; *Stevenson vs. Doe,* 8 *Blackford,* 508 ; *Smith's Commentaries on Statutes, pages* 888, 904; *Grimes vs. Bryne,* 2 *Minnesota,* 89.

*Fifth.*—The lien of a judgment is derived solely by statute, and is part of the remedy. *Bank of North America vs. Fitzsimons*, 3 *Binney* 342; *Little vs. Harvey*, 9 *Wend.* 177; *Penn. Bank vs. Carver*, 2 *Rawle* 224; *Calhoun vs. Snyder*, 6 *Binn.* 135; *Bank of U. S. vs. Tyler*, 4 *Peter* 366; *Westervelt vs. Lewis*, 2 *McLean* 511.

*Sixth.*—The right of execution on such a judgment had lapsed and expired under the Wisconsin law two years after the rendition of judgment. *Laws of Wisconsin Territory Digest*, 1839, *page* 229. The Minnesota Statutes do not apply to the case. *Compiled Statutes, pages* 566, 567, 568.

*Seventh.*—The action is in its nature equitable, to remove a cloud and prevent a multiplicity of suits. *Maddock's Chancery*, 1 *Vol.*, *page* 166; *Story's Eq. Jur. Secs.* 826, 852 *to* 860, 2*d Vol. page* 170, *etc;* *Coit vs. Horn*, 1 *Sanf. Ch. R. page* 1; *Nutbrown vs. Thornton*, 10 *Ves.* 159; *Livingston vs. Livingston*, 6 *Johns. Ch.* 497; *Nicolls vs. Trustees of Huntington*, 1 *Johns. Ch. R.* 166; *Alexander vs. Pendleton*, 8 *Cranch* 862; *Willard's Equity Jur.* 304; *Petit vs. Sheppard*, 5 *Paige* 501; *Hamilton vs. Cummings*, 1 *Johns. Ch.* 517; *Apthap vs. Comstock*, 2 *Paige* 482; *Osborne vs. Taylor*, 5 *Paige* 515. The doctrine is affirmed by our *Statute*. *Compiled Statutes, p.* 595.

Points and authorities of Defendant in Error:

*First.*—The judgment is a lien on the property mentioned in the complaint.

1. The laws of Wisconsin made this judgment, when rendered, a lien on all the real property of the Defendant therein and all that he should afterwards acquire. See laws of Wisconsin under which this judgment was entered.

The *Revised Statutes of Minnesota* were passed in 1851, and *Section* 1 *of Chapter* 137, *page* 578, contains this provision:

"All the provisions contained in the act for revising and consolidating the General Statutes of the Territory, etc., shall take effect and go into operation, etc., September 1, 1851, and from and after the day last mentioned, all acts and parts of acts, unless heretofore repealed, whether enacted by the Legislative Assembly of the late Territory of Wisconsin or of the

Territory of Minnesota shall be repealed, except as hereinafter particularly provided."

Section four of said act reads as follows:

" The repeal of the acts mentioned in this chapter shall not affect any act done or right accrued or established, or any proceeding, suit or prosecution had or commenced in any civil action or proceeding previous to the time when such repeal shall take effect; but every such act, right or proceeding shall remain as valid and effectual as if the provisions so repealed had remained in force."

The Wisconsin statute gave to this judgment as an incident thereto, and as part of its effect, a lien on after acquired property, but it is claimed by the Plaintiff that the provision of the *Wisconsin Statutes* giving a lien on after acquired property was repealed by the *Revised Statutes*, and that it is not within the exceptions mentioned in section four. The Defendants claim that it is within those exceptions and that the Legislature did not intend to and have not taken away its lien.

1. It is an " act done," and included in those words.

2. It is a " suit had," and included in those words.

The statute speaks of any proceeding, suit or prosecution had or commenced—*i. e.* finished or still pending—if a proceeding, suit or prosecution, etc., was " had," that was the end of it. Now a suit can only be " had " or come to an end by a " judgment "—before judgment it is pending. The word "had" is clearly used in contradistinction to the word " pending " or " commenced "—but not " had."

In this case the suit or proceeding was " had," judgment having been entered.

Now section four says, " The repeal, etc., shall not affect any act done, etc.," but every such " act, right or proceeding shall remain as valid and effectual as if the provisions so repealed had remained in force." The " act " to remain effectual and valid ! What other act than a judicial act can be then referred to, or in other words a judgment. What " act done," would the Legislature then declare to remain valid ?

Now if taking away from this judgment its lien on after acquired property, would " affect " it or make it less or more valid or effectual than it was before, then the construction con-

tended for by the Plaintiff must be wrong, or that of the Defendant right.

Let us see then.

The Hart judgment, when rendered, was a perfect and complete judgment, nothing remained to be done to it.

As a judgment it had under the then law certain attributes, incidents or effects, certain powers as it were, or in other words it was " effectual for certain things."

One was to bind and be a lien on all the Defendants' real estate which he had at the time of its rendition.

Another was to bind and be a lien on any real estate he might afterwards acquire, or in other words it compelled the Defendant if he should thereafter purchase real estate to hold it subject to the lien of the judgment.

Those were some of the ".effects" of rendering the judgment.

Another " effect " of the judgment was the right it gave to the Plaintiff to take out execution. All these were the " effects " or consequences of the entering or rendering of the judgment.

Now suppose you take away the right to issue an execution! Is not the judgment less effectual than before ! Or suppose you take away its lien on the then lands of the debtor ! Aside from any question of vested right, is it not less effectual than before ? And take away its lien on after acquired property ! Is it not less " effectual " than before ? Do not any or all of these measures " affect " the judgment?

And yet section four says the repeal shall not " affect " it, and the judgment shall remain as " valid and effectual " as if the provisions so repealed had remained in force. On the construction contended for by the Plaintiff, would it be as valid and effectual ?

The power of the judgment to operate as a lien on after acquired property is an incident of the judgment, and it is plain that the incident cannot be taken away without affecting the judgment.

Thus looking at the judgment either as a " suit had " or an " act done," it is plain that the construction contended for by the

Plaintiff, would " affect " it, and if it does affect it that construction must be wrong and the Defendant's right.

It will be seen thus that the question is not one of " *casus omissus* " on the part of the Legislature, but that they actually have included the laws as to the lien of old judgments among those not intended to be affected by the repeal.

The " intention " of the Legislature in this matter is clear.

By the Code, judgments have the same lien as under the old law, and on after acquired property as well as that already owned—*Revised Statutes, page* 361—except that under the Code the lien is not limited to ten years, nor is it limited at all.

Thus the Code extends instead of lessening the lien and effect of a judgment.

The Code too provides that judgments entered under its provisions shall be a lien from the time when docketed, but the words expressly refer to judgments entered under its provisions.

HENRY J. HORN, Counsel for Plaintiff in Error.

ALLIS & PECKHAM, Counsel for Defendant in Error.

*By the Court.*—EMMETT, C. J. Whether the judgment rendered against Randall on the 17th of September, 1850, was authorized by the statute then in force, and if so, whether the lien thereof is taken away by subsequent legislation, are the important questions to be considered in this case.

The judgment was by confession, under the statute of Wisconsin, then in force here, which authorized the entry of a judgment, upon a plea of confession, signed by an attorney of the court upon filing with the clerk a declaration, plea of confession, and a copy of the bond, contract, or other evidence of the demand for which judgment is confessed, together with the authority for confessing such judgment, which, however, was required to be in some proper instrument, distinct from that containing the bond, contract, or other evidence of the demand. *Laws of Wisconsin Territory of* 1844, *page* 105.

Randall, on the 9th of September, 1850, executed a bond to

Hart in the penal sum of $7000, conditioned for the payment of two acceptances, both dated August 31, 1847, one for $1,333.33, payable one year from date, the other for $1,666.67, payable two years from date, with interest, and at the same time he gave a warrant authorizing any attorney of any court of record to appear in his name and to receive a declaration for him in debt for the sum of $3,635.13, on a certain bond of that date, " in the penal sum of $7,000, conditioned for the payment of $3.635.13,  *  *  or on a *mutuatus* for the said sum of money borrowed by me [him] at the suit of Henry N. Hart, the obligee therein,  *  *  file common bail, and confess the same action, or suffer judgment to pass against him by *nil dicit* or otherwise," etc.  The warrant is according to the form in use in some of the States, a precedent for which is given in 2 *Burrill* 449, and authorizes the confession of a judgment for the amount due in an action, either directly on the bond, or for the money secured thereby, which he acknowledges to have borrowed.  The term *mutuatus*, so far as we are able to learn, is descriptive of a declaration, or count for money borrowed.  2 *Archibald's Prac.* 17;  *Taylor's Law Glossary* 323.  The obligee chose the latter mode, declaring for $7,000, the penalty of the bond, and reciting that the Defendant had borrowed of the Plaintiff the sum of $3,635.13, as of the date of the bond.  The bond and warrant of attorney, with a plea of confession, were filed, and judgment entered for the amount claimed to have been borrowed, being the exact amount of the several acceptances, with interest.

It is now urged that there was no authority in the warrant to enter such a judgment, and it is alleged that there is an essential variance between the bond filed, and that recited in the warrant, because the bond is conditioned for the payment of two acceptances in favor of Pritchard, amounting to $3,000, while the warrant refers to a bond conditioned for the payment of $3,635.13, borrowed of Hart.  We are satisfied, however, that the bond referred to in the warrant, was the bond that was filed, and that the authority was substantially pursued.

The instruments are between the same parties, both executed the same day, and doubtless had reference to the same transaction.  The drafts which the said Randall had accepted and

became liable upon, and the payment of which the bond was intended to secure, though drawn in favor of Pritchard, and amounting at the date of the drawing to $3,000 only, had, as the bond recited, been endorsed by Pritchard, and at the date of the bond and warrant of attorney, amounted, with the interest, to the exact sum for which judgment was authorized to be entered. We do not entertain a doubt that the warrant referred to the indebtedness secured by the bond; and as the judgment was taken in open court during a regular term, we will presume that all doubt, if any there existed, was removed, before the court suffered judgment to be entered.

This judgment was suffered to remain upon the records of the court, without objection, until sometime in March, 1859, when the judgment creditor—no execution having been issued thereon within five years,—obtained leave of the court to issue an execution. This leave could only be granted after due notice to the Defendant. The judgment debtor afterwards moved to set aside the execution thus issued, but the motion was not granted. No other, or further proceedings were ever had to relieve against the judgment, or correct any errors alleged in the proceedings, and the successor in interest of the judgment debtor, without an allegation of fraud in its rendition, or in any manner showing himself entitled to equitable relief, now asks that the judgment should be declared a nullity on mere technical grounds.

The judgment is not a nullity. At the worst, it is merely irregular, and is good against the party until set aside, or reversed by direct proceedings upon appeal, or writ of error. Or, if it was taken against him through his mistake, inadvertance, surprise, or excusable neglect, and he could have so made it to_appear to the court, he might have been relieved at any time within a year after notice of the judgment. The time for appeal, or writ of error, has long since passed, and there is no pretense that he is entitled to relief on the ground of mistake, inadvertance, surprise, or excusable neglect. There should be an end to litigation. The judgment debtor has permitted the time to pass within which he could appeal to the remedies provided by statute. He could have resisted on proper grounds, the issuing of the execution. He let that

opportunity pass, and moved afterwards to set the execution aside, on the same grounds, for which relief is now asked. He has certainly had his day in court, and has not sought to disturb the decision. The facts of the case would not call for equitable interference on his behalf, and as his successor in interest, the present Plaintiff, can urge nothing more than has already been urged in behalf of the judgment debtor, we think the judgment should not be disturbed.

The law in force at the time this judgment was rendered, made it a lien from the time of its rendition, on all the real property of the judgment debtor, in the county, which he then had or might thereafter acquire, and limited the time within which the execution could be issued thereon to two years, except by leave of the court. In 1851, however, the legislature passed an "Act for revising and consolidating the general Statutes of the Territory," wherein it is recited in the preamble that "it is expedient that the general Statutes of the Territory should be *consolidated* and *arranged* in appropriate chapters, articles and sections, that omissions and defects therein should be supplied and amended, and the whole should be rendered concise, plain and intelligible." By this act the then existing Statutes were consolidated in one general law, omitting, however, such acts and parts of acts as the Legislature did not wish to retain, and supplying omissions, and making such other changes as seemed necessary, and by a general clause—*Sec.* 1, *Chap.* 137—all former acts then in force, except those thereinafter particularly named, were repealed.

This act made no alteration in regard to the lien of judgments, except to limit its duration to ten years, to make it commence from the time of docketing it in the county, instead of the date of its rendition, and to extend the time for issuing execution from two years to five years. But the Plaintiff here contends that the repeal of the old law, by the general clause before referred to, destroyed the lien which might otherwise have attached to the judgment, and that the saving clause found in section four of the last chapter of the act does not reach this case, because the judgment debtor not having acquired the property in question until after the repeal, there was nothing for the lien to attach to while the law was in existence.

Whether the unconditional repeal of a law, by which a judgment is made a lien on property, would have the effect of destroying such lien, it is not now necessary to decide, for we do not regard the act for revising and consolidating the general Statutes of the Territory as repealing unconditionally, any act or part of an act which is there retained or re-enacted.

The object of this act, as its title imports, and as is clearly expressed in the preamble, was to furnish to the people of the Territory, in one plain, concise and intelligible act, all the laws then in existence, and to amend the same by striking out such acts or parts of acts, and adding such new provisions as our circumstances required, or were necessary to make the whole consistent with itself. Its effect was merely to amend the existing laws by repealing certain parts, and inserting or adding others, leaving that which was re-enacted as if it had never been disturbed. This all might have been done directly by amendments to the old Statutes, but the Legislature effected the object and avoided much confusion, by re-enacting what they wished to retain, with such additional chapters and sections as they desired, and by a general clause repealing all former Statutes, not specially enumerated—evidently intending by the repeal, to do no more than repeal such acts and parts of acts, as were not re-enacted in the consolidated act, and expressly providing that all acts done, rights accrued or established, suits or proceedings had or commenced under the former laws, should remain as valid and effectual as if the provisions so repealed had remained in force. *Sec. 4, Chap.* 137. A similar question was presented for our consideration in *Holcombe vs. Tracey*, 2 *Minn.* 241 ; and we there held that the act of 1851 should not be treated as an original act, but as amendatory of, and to be construed with reference to the former laws.

As before remarked, the provisions of the old law making judgments a lien on after acquired real estate, was retained, the lien, however, dating from the time of docketing the judgment. This judgment was docketed, substantially, according to the new law, although the docketing was not necessary to the lien according to the law then in force. And can we reasonably suppose that the Legislature intended by this act to

deprive existing judgments of their liens. We think the saving clause before referred to, negatives any such idea, and that the most that could, in any event, be required of judgment creditors would be to comply with the new law by having their judgment docketed.

We are of opinion that the repealing clause of the act of 1851 affected only such parts of the old Statutes as were not retained in the new. That the lien of judgments then existing was not thereby destroyed; and were it otherwise, that the repeal would affect only such as were not docketed, and that the lien would again attach, by complying with the new law, from the time of the docketing.

Judgment affirmed.